UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

IN RE:

AMT, LLC                                                                 Chapter 11
                                                                         Case No.: 11-30933
    Debtors-in-Possession.

---

MOTION FOR APPROVAL OF POST PETITION FINANCING AND REQUEST FOR
EXPEDITED HEARING

---

Debtor-in-possession, AMT, LLC, hereby files this Motion for Approval of Post-Petition Financing and further, requests the Court to set an expedited hearing on the motion, and in support thereof does state:

1. On May 27, 2011, the Debtor filed its voluntary petition under chapter 11 commencing this proceeding.

2. At the time that the petition was filed, the Debtor's major asset consisted of 11.77 acres of waterfront property located on Destin Pass in Destin, Florida.

3. The property is subject to a mortgage in favor of Jefferson Bank and Trust Company which also encumbers a separate parcel of property consisting of an office building described as Lot 160, Destin Pointe. The total combined indebtedness owed to Jefferson Bank and Trust, secured by both parcels of property was approximately $4,842,150.13 on the date that the bankruptcy petition was filed.

4. The Debtor has entered into an agreement with Omega Commercial Finance Corporation to obtain a loan in the total amount of $14,100,000.00 which would be secured by the 11.77 acres. The mortgage would not encumber Lot 160, Destin Pointe.

5. Omega Commercial Finance Corporation has agreed to provide the above referenced loan to be closed on August 17, 2011. A copy of the loan commitment letter, dated May 26, 2011, is attached hereto.

6. As of the date of this motion, all contingencies under the loan commitment have now been met and the loan is now ready to be closed.

7. The loan proceeds include an amount which would be escrowed to make the payments under the loan for three years following the closing. This will provide the Debtor with time to find a developer for the property or to otherwise market or sell the property to pay off the debt being incurred with Omega through the loan transaction.

8. The proceeds from the loan will be used to pay all creditors in the chapter 11 case in full. It is proposed that the secured creditor, Jefferson Bank and Trust, will be paid at closing in order for Omega Commercial Finance Corp. to obtain a first lien position on the property. The balance of the funds would be deposited into the debtor-in-possession account to be used to pay the creditors in full, upon confirmation of the Debtor's plan.

9. The Debtor requests that all fees, including origination fees, as set forth in the loan commitment, be authorized to be paid by the Debtor at closing. The payment of the fees will not diminish the debtor's ability to pay the creditors in the case in full since the proceeds of the loan are in excess of the amounts owed to creditors in the case.

WHEREFORE, based on the above, Debtor requests the Court to enter its Order allowing the Debtor to close on the loan transactions set forth in the attached loan commitment letter and approving all fees associated therewith, and further authorizing the Debtor to pay Jefferson Bank and Trust in full at closing in order to allow the new lender to obtain a first lien position on the

property.

_____
J. Steven Ford
Florida Bar Number 512869
Wilson, Harrell, Farrington, Ford,
Wilson, Spain, & Parsons, P.A.
307 South Palafox Street
Pensacola, FL 32502
(850) 438-1111 Telephone
(850) 432-8500 Facsimile
jsf@whsf-law.com

CERTIFICATE OF SERVICE

I DO HEREBY CERTIFY that a true and correct copy of the foregoing was sent to Jason Egan, U.S. Trustee, and to Roland Kiehn, Esquire, and all other parties in interest appearing on the Debtor's mailing matrix on this 9th day of August, 2011.

_____
J. Steven Ford, Esquire



**ΩMEGA**
COMMERCIAL FINANCE CORP.
Commericial Real Estate Final Conditional Commitment Letter

May 26, 2011

Jon S Cummings IV
Managing Director
CCRE Capital LLC
A wholly owned lending division of Omega Commercial Finance Corporation
1000 5th Street Suite 200
Miami Beach, Florida 33139

Borrower:

AMT, LLC
Michael Smallwood Manager
480 Gulf Shore Drive
Destin FL 32541

Re: Revisions of original signed Agreement dated May 26, 2011 -The $14,100,000 Dollar Bridge Loan to AMT, LLC for 11.77 acres of beach property in Destin, Fl.

In accordance with your request we have reviewed the preliminary documentation and hereby set forth the final terms and conditions under which we are providing the financing to AMT, LLC for the above referenced property ("the Project"). Please find below the *Final Conditional Commitment* terms on behalf of CCRE Capital LLC, the wholly owned funding/lending division of *Omega Commercial Finance Corporation.*

If this agreement is not executed by June 6th 2011 3:00PM EST all terms and conditions of this agreement will be deemed null and void:

| | |
|---|---|
| Lender: | CCRE Capital a wholly owned subsidiary of Omega Commercial Finance Corporation. |
| Borrower: | AMT, LLC a single-purpose, bankruptcy remote entity. |
| Sponsor: | AMT, LLC |
| Description of Project: | The subject property consists of approximately 11.77-acres or 511,701 square feet of vacant land located just north of the Destin Pass and south of the Destin Harbor on Destin Pointe in Destin, Florida. The subject is zoned -HDR', High Density Residential, allowing for a variety of residential uses, with a maximum density allowance of 234 units. An MAI 'As Is' appraisal was provided by Fruitticher Lowery Appraisers of Pensacola, Fl. This appraisal was done March 17, 2011 with a valuation of $27,850,000. The property is subject to a 99 year perpetual lease, which is renewable for an additional 99 years. The property can be transferred to a Fee Simple status upon request. |
| Non-Recourse: | Omega shall have the right, in its sole and absolute discretion, to structure the Non-Recourse Financing so as to bifurcate it, sell participations, enter into a joint venture or other inter creditor arrangement, or otherwise structure the Financing, provided that the underlying cost and material terms and conditions of the Financing remain the same as set forth herein for the Borrower. |
| Total Gross Financing Amount: | The Gross Financing Amount of; Fourteen Million One Hundred Thousand Dollars ($14,100,000) shall be as follows: |
| Loan-To-Value Ratio: | The Gross Financing amount described herein is fifty-one (51%) percent of the Appraised "As Completed" Value of Twenty-seven Million Eight Hundred Fifty Thousand Dollars ($27,850,000). |

1 | 5/23/2011

**ΩMEGA**
COMMERCIAL FINANCE CORP.
Commercial Real Estate Final Conditional Commitment Letter

| | |
|---|---|
| Collateral: | A 1st position on the real estate and all improvements encumbering the properties to the extent required by Omega a security agreement, and or security interest in the membership interests in AMT, LLC. (the "Borrower") |
| Interest Rate: | The Interest Payments on the financing shall be at Ten and three quarter fixed (10.75%) percent per annum, except for amounts deducted for interest reserves. |
| Term of Financing: | The loan has a term of Thirty-six (36) months from the first day of the month following the closing date for any unpaid balance amounts. In the event the Borrower is not in default of any interest payments on said loan at the maturity date, at the option of Borrower and with the agreement of Omega, an option to extend for an additional one (12) month term may be exercised by the Borrower at the then-prevailing loan rate with a 1% Extension Fee, costs will be applied. |
| Fixed Interest Payment: | The monthly Interest Payments will be due starting thirty (30) days from the disbursement of funds. The payment shall occur on the 1st of each calendar month for the accrued financing amount to Borrower. |
| Interest Payments: | The monthly Interest Payments will be due thirty (30) days from the disbursement of funds. The payment shall occur on the 1st day of each calendar month for the accrued balance amount disbursed to Borrower. |
| 18 Month Interest Reserve: | Omega shall deduct from the gross financing amount to escrow in a manner satisfactory to Omega and Borrower as an Interest Reserve in the amount of Two Million Two Hundred Seventy-three Thousand Six Hundred Twenty-five Dollars ($2,273,625) which will be used by Borrower to pay the 1st 18 months interest payments until account is depleted to zero balance; a notification will be issued to Borrower designating the remaining interest payments are the responsibility of the Borrower until the maturity date of the loan. Borrower and Omega agree no interest shall accrue on the amount deposited into escrow account at any time. *(Please reference "Source & Uses" below)* |
| Origination Fee: | A total of two and a half (2.5%) percent will be deducted from Gross Financing Amount upon closing to compensate Omega. |
| Intermediaries Fee: | The fees described in this section shall be due and payable only if the loan closes and funds. The Borrower agrees to hold Omega harmless from (i) the fees listed below, and (ii) from any and all other claims, of brokerage commissions, finder's fees, or consultant fees due in connection with its application and the obtaining of this Loan contemplated hereby made by persons hired by the Borrower. Omega shall indemnify and hold Borrower harmless with respect to all such fees claimed by claimants hired by Omega, except for the fees listed below which shall be paid by Borrower. Thus, Omega shall disburse the following fees to intermediaries: |
| | I Consultant Fee A total of (2%) percent ($282,000) will be deducted from the Gross Financing amount upon closing and paid to David Nunn 5642 Delta Av Alta Loma CA 91701. |
| | II. Referral Fee A total of half percent ($70,500) will be deducted from Gross Financing amount upon closing and paid to Herb Nunez 11952 Wilshire Blvd Los Angeles CA 90025. |
| | III. Protect Consultant A total of ($350,000) Three Hundred Fifty Thousand Dollars will be deducted from Gross Financing amount upon closing and paid to Michael Bona San Carlos 2 S/W Ocean Ave Carmel by the Sea CA 92921. |



Commercial Real Estate Final Conditional Commitment Letter

| | |
|---|---|
| Exit Fee: | Upon repayment of the total gross financing amount an additional fee of one (1%) percent is due by Borrower to Omega herein known as the ("Exit Fee"). |
| Breakup Fee: | The Borrower agree that in the event that Borrower or any affiliate shall obtain debt or equity financing in connection with the refinancing of the Property from a party other than Omega within 60 business days from execution of the Final Commitment letter. Borrower shall be obligated to pay to Omega as total compensation herein known as (the "Breakup Fee") an amount equal to two percent (2%) of the proposed Loan amounts plus all third party out of pocket costs incurred by Omega. |
| Equity Waterfall: | Omega shall be compensated twenty (20%) percent of the *Net Profits* from the sale/refinancing of the collateral or any net proceeds from the disposition of potential unites) sales. However, Omega shall be repaid in full the principal loan amount of ($14,100,000) prior to any disbursement of *Net Profits* to the Borrower (the Equity Waterfall). |
| Due Diligence Cost: | The Borrower will be responsible for Due Diligence cost described in exhibit A that will be designated for the following not limited to but including the cost of underwriting, legal and review of 3rd party reports, current/updated appraisals and or appraisal reviews, limited travel, preliminary, title reports to be paid to 3rd parties (underwriting and legal). (References "Source & Uses") |
| Pre-Payment Provision: | The Loan may be prepaid in full anytime with thirty (30) days written notice without penalty. Notwithstanding the above, should the Loan be prepaid any time prior to the first 12 months following Closing, Omega shall be entitled to a "Prepayment Fee". The Prepayment Fee shall be calculated by taking the outstanding Loan Amount at the time of prepayment multiplied by the applicable Interest Rate, divided by twelve (12), with such sum multiplied by the number of months (including any partial months as may be applicable) from the date of prepayment through the end of the 12th month following Closing. |
| Conditions of Funding: | The Loan Documents shall be acceptable to Omega's counsel in its reasonable discretion and all legal matters, whether or not specifically referred to herein, shall be acceptable in all respects to such counsel in its reasonable discretion and shall be supported by such representations, warranties and opinions of counsel, and by such evidence, assurance or proof relating to legal matters as Omega and its counsel shall reasonably deem necessary or appropriate. Without limiting the foregoing, for the purposes of due diligence prior to Closing, Omega and its counsel shall reasonably require the following items, each of which must be acceptable to them in their reasonable discretion: (i) property and liability insurance; (ii) title insurance in an amount equal to the Loan Amount plus all potential accruals, UCC searches, and municipal violation searches; (iii) a current survey for the Property; (iv) licenses or authorizations necessary to operate the Property; (v) all management, operating, maintenance and other agreements affecting the Property; (vi) the availability of all utilities; (vii) all necessary corporate or partnership organizational documents, resolutions and consents; (viii) financial statements of the Borrower. All 3rd Party legal loan document and security agreement preparation cost/retainer shall be paid by the Borrower directly to Omega's Designated law firm/attorney not to exceed $15,000. Omega will use the services of Borrower's legal counsel to the extent ethically permitted to attempt to minimize the cost to Borrower. |
| Insurance & Title Policy | The Borrower must provide a current ALTA/ACSM "boundary" survey of the Property, and an acceptable Title Policy prior to Final Closing, thus any "Exceptions" or "Requirements" in the Title Policy will be determined acceptable at the sole discretion of Omega legal advisors. In the event such condition cannot be satisfied by the Borrower, Omega has no obligation to ("Close") per the terms of the agreement. The Borrower shall purchase an insurance policy (general liability) in the amount of the Gross Funding Amount (if applicable), containing such endorsements as required by Omega may require. The insurance policy shall be for general liability at $1,000,000. Additionally, the Borrower shall |

3 | 5/23/2011



Commercial Real Estate Final Conditional Commitment Letter

| | |
|---|---|
| | maintain at all times, at the Borrowers sole cost and expense, policies of liability and property (including business income coverage) insurance, and other insurance coverage required. All insurance policies shall be issued by insurance companies satisfactory to Omega having an A.M. Best Key Rating of at least A+ |
| No Additional Liens – Additional Financing: | The Loan Documents shall prohibit any lien or security interests encumbering the Property without the prior written consent of Omega. Further, the Loan Documents shall prohibit any liens or encumbrances on the Property, Borrower or the membership interests in the Borrower, without the prior written consent of Omega. |
| Protective Covenants: | This document is evidencing in the securing of the Financing will provide Omega with customary covenants and approval rights for the financing of this nature. |
| Governing Law: | The governing law(s) provided for in the Term Sheet shall be at the sole and absolute discretion of Omega's counsel. |
| Reporting Requirements: | Omega may request such other information as it may reasonably require from time to time concerning the Property, the Borrower. Upon Omega's request, Borrower shall provide annual financial statements which have been audited or 'reviewed' by an independent accounting firm acceptable to Omega, at Borrower expense and any time after the occurrence of an event of default, at no cost to Omega. |
| Closing Date: | As soon as possible, with an estimated closing date of seventy-five (75) business days from *executed Final Commitment* |

Estimated Sources & Uses:

| Sources - USD | |
|---|---:|
| ▪ Omega's Loan | $14,100,000 |
| Total Sources | $14,100,000 |
| Uses – USD | |
| ▪ Bank of America Payoff Proceeds | $5,000,000 |
| ▪ Jefferson Bank Payoff Proceeds | $4,800,000 |
| ▪ Interest Reserves (18 months) | $2,273,625 |
| ▪ Loan Origination Fees To Omega | $352,500 |
| ▪ Brokers Fee | $702,500 |
| ▪ Property Fees & Final Entitlements(TBD) | $971,375 |
| Total Uses | $14,100,000 |

USES OF PROCEEDS

The uses of the proposed financing shall include a Bridge loan to pay off all real-estate mortgages, debts and encumbrances of the subject properties, Jefferson Bank which holds cross-collateralized liens on Lot B and lot 160), and (Bank of America which covers the signature note between the borrower and ZIF Family LP). The project consisting of approximately 11.77-acres or 512,701 square feet of vacant land located just north of the Destin Pass and south of the Destin Harbor on Destin Pointe in Destin, Florida. The subject is zoned "HDR", High Density Residential, allowing for a variety of residential uses, with a maximum, density allowance of 234 units. An MAI 'As Is' appraisal was provided by Fruitticher Lowery Appraisers of Pensacola, Fl. This appraisal was done March 17, 2011 with a valuation of $27,850,000. The property is subject to a 99 year perpetual lease, which is renewable for an additional 99 years. The property can be transferred to a Fee Simple status upon request.

SIGNATURES:

4 | 5/23/2011



Commericial Real Estate Final Conditional Commitment Letter

By signing this AGREEMENT you are hereby accepting all the above terms and conditions set forth in this AGREEMENT. Please scan and email to underwriter@ocfncorp.com or fax to (866) 390-8127

Acknowledged and agreed to as of this day of __May 27__ 2011

Mr. Michael Smallwood
Manager
AMT, LLC
480 Gulf Shore Drive
Destin FL 32541

By: /s/ _____
Name: Mr. Michael Smallwood

Acknowledged and agreed to as of this day of __June 9__, 2011

Omega Commercial Finance CORP.
1000 5th STREET SUITE 200
MIAMI BEACH, FLORIDA 33139

By: /s/ _____
Jon S. Cummings IV, CEO

## SCHEDULE "A"

These General Conditions are part of the attached Final Agreement and deemed a part hereof as if set forth therein.

1. **Survey:** The BORROWER shall provide a survey certified to Omega and or Assignee and its title companies satisfactory to the title company on each piece of Property prepared by a surveyor licensed by the State showing the project to be free of encumbrances, overlapped and other survey defects, all in accordance with the Lender's survey requirements. *This can be included in the Property Survey.*

2. **Insurance:** The BORROWER must furnish liability insurance in an amount satisfactory to the Lender.

3. **Title:** Omega and or Assignee shall receive a first lien on the Property acceptable to its Counsel and BORROWER shall provide a paid title insurance policy in an amount no less than the amount of the Financing program insured by a title company or companies satisfactory to Lender.

4. **Flood Insurance:** If any material part of any parcel of the Property is located in an area designated as being subject to a special flood hazard, BORROWER shall obtain all available flood insurance after buildings are constructed thereon. If insurance is not available, and if such unavailability legally precludes the mortgage from covering such affected parcel, such parcel shall be removed from the Collateral and all financing program amounts recalculated.

5. **Easements:** All necessary easements for utilities, public road access, parking or otherwise shall be provided for prior to closing, if permitted by Lien Holder. (NOT APPLICABLE)

6. **Additional Collateral:** As additional Property BORROWER agrees to allow Omega and or Assignee to lien all inventory, machinery, equipment, accounts receivable and all other assets owned by BORROWER. (NOT APPLICABLE)

7. **Approval of Lender's Counsel:** The title in the project and the form and substance of each and every document evidencing the Financing program and the security thereof or incident thereto,

5 | 5/23/2011

**ΩMEGA**
COMMERCIAL FINANCE CORP.

Commericial Real Estate Final Conditional Commitment Letter

must be satisfactory to and approved by Counsel to Omega in its sole discretion.

8. **Approval of Borrower's Counsel, Etc.:** BORROWER acknowledges that it has consulted with counsel of its choice and with such other experts and advisors as it deemed necessary in connection with the negotiation, execution, and delivery of this Commitment and the other Financing program Documents. This Commitment and the other Financing program Documents shall be construed without regard to any presumption or rule requiring that they be construed against the party causing them, or ally part of them, to be drafted.

9. **Representations and Warranties of BORROWER:** Customary for transactions of this type, including, but not limited to, the following:

    a. Neither the Financing program Documents nor the performance by BORROWER of its obligations there under violate any provisions of law, of BORROWER'S partnership agreement, corporate by-laws, or of any agreement which is binding upon BORROWER. No action or permission by any governmental commission, bureau or agency is required in connection with the execution or the performance of the Financing program Documents by BORROWER, and BORROWER is not subject to filing, reporting or like requirements of any governmental commission, bureau or agency charged with control or supervision of environmental concern.

    b. All financial information furnished or disclosed to Omega and or Assignee by BORROWER touching upon the financial condition of any of them is true and correct as of the date furnished, and there has been no omission of any material fact relating thereto.

    c. BORROWER is in default in the performance, observance or fulfillment of any of the obligations or conditions contained in any agreement or instrument to which it is a party, or with respect to any evidence of indebtedness or obligation for borrowed money which affects in any way the Property, nor does any condition exist which, upon the lapse of time or giving of notice, or both, would constitute an event of default under, or grounds for termination of, any such agreement or instrument. No actions, suits or proceedings at law or in equity are pending or, to the best of BORROWER'S knowledge, threatened, in any court or before any federal, state, municipal or governmental department, commission, board, bureau, agent or instrumentality against or affecting BORROWER, or any of its properties or rights which, if adversely determined would materially adversely affect the financial condition of BORROWER or materially impair the right of the Borrower to carry on its business substantially as now conducted, nor is the Borrower in default with respect to any judgment, writ, injunction, decree, rule or regulation of any court or federal, state, municipal or governmental department, commission, board, bureau, agency or instrumentality related to the Property, except that all representations in this paragraph are qualified by the following disclosures (a) Jefferson Bank and Trust Company which holds a first mortgage on the Property has asserted that the Borrower is in default on that loan and is pursuing a lawsuit to foreclose its mortgage on the Property, and (b) if Jefferson does not agree to delay its foreclosure pending the Borrowers efforts to refinance the Property, the Borrower intends to take appropriate action to forestall the foreclosure proceeding and protect its substantial equity in the Property by filing Chapter 11 bankruptcy.

10. **Miscellaneous:** Prior to the closing of the Financing program and disbursement of funds, in each instance the BORROWER must comply with the following:

6 | 5/23/2011



**ΩMEGA**
COMMERCIAL FINANCE CORP.
Commericial Real Estate Final Conditional Commitment Letter

a. The BORROWER is to produce such evidence as Omega and or Assignee may require demonstrating current full compliance with all applicable zoning, health, environmental and safety laws, ordinances and regulations (including without limit approval of local, private or public sewage or water utility).

b. The BORROWER shall certify or supply other satisfactory evidence to Omega and or Assignee at the time of the closing that there is no action or proceeding pending before any Court or Administrative Agency with respect to the validity of any laws, ordinances or regulations, and any certifications or permits issued there under, pertaining to the premises.

c. The BORROWER shall certify or supply other evidence satisfactory to Omega that the BORROWER is not a party to any existing or pending or threatened litigation, unless specifically disclosed to Omega. Omega and or Assignee shall require prior to closing, evidence satisfactory to them and their Counsel of full compliance with all Environmental Clean-Up Responsibility Acts and that no actions pending or liens imposed under any Spill Compensation and/or Control Acts. During the term of the Commercial Real Estate Financing program, there shall be no additional financing nor any transfer of title, not contemplated in the Financing program Documents without the prior written approval of Omega.

d. Execution by the BORROWER of such financing program documents including, but not limited to, a mortgage and mortgage note, satisfactory in form and substance to Omega's and or Assignee's own Counsel, including a prohibition against the transfer of title of any of the Property not contemplated in the Financing program Document, and if the BORROWER is a corporation or partnership, a change in the management or controlling interest in the BORROWER. BORROWER may not prepay Omega and or Assignee at any time, in whole or in part, without penalty except for all of the "RELEASES", which is considered PMD whenever the program ENDS. This financing commitment for the Commercial Real Estate Financing program Agreement is subject to the accuracy of all information, representations, exhibits and other materials submitted with or in support of the Financing program request and there must be no adverse change in the set of facts prior to the disbursements of funds or during the term of the Financing program. This commitment may be terminated by Omega Capital Funding and the Commitment Fee retained and earned by Omega Capital Funding in the event of the following:

   (i) If the BORROWER shall fail to comply with any of the terms or conditions hereof.

   (ii) In the event of a sale, conveyance or other disposition of any of the Property.

   (iii) In the event of a materially adverse change in the collateral and/or financial condition of the BORROWER.

   (iv) Any material misrepresentation of facts set forth herein or any omission by the BORROWER of any material fact; for any good faith reason.

f. In the event of any material default during the term of this finance commitment for the Commercial Real Estate Financing program , Omega may at its option, require immediate payment of the balance of the all Payments and Omega Capital Funding may terminate the program and retain the all paid portions of the payments. The BORROWER has the obligation to disclose all material facts, past and present, related to the BORROWER, the Property, the transaction, etc.

7 | 5/23/2011

    h. The BORROWER specifically acknowledges and agrees that Omega Capital Funding and/or Assignee's own counsel opinion letters relating to, among other items, usury. This finance commitment is subject to the express condition that at no time will the BORROWER be obligated or required to pay interest at a rate which could subject Omega Capital Funding and/or Assignee to either civil or criminal liability as a result of being in excess of the maximum rate which the BORROWER is permitted by law to contract or agree to pay. If, by the terms of this commitment or the Financing program Documents the BORROWER is at any time required or obligated to pay interest at a rate in excess of such maximum rate, the rate of interest shall be deemed to be immediately reduced to such maximum rate and the portion, if any, of all prior interest payments in excess of such maximum rate shall be applied and shall be deemed to have been payments in reduction of the principal balance.

11. **Validity of Financing:** The financing commitment for the Commercial Real Estate Financing program Agreement and the closing thereof shall in all respect be legal and not violate any applicable law or other requirements of any governmental authority. The BORROWER will submit to the Omega at closing a current written opinion by the BORROWER'S legal Counsel, satisfactory to Omega and or Assignee, to the effect, among other things, that all financing documents are valid and binding upon the BORROWER and any other mortgagor and are enforceable in accordance with their terms and are legal and do not violate any local, state or federal laws including, but not limited to, all usury laws. Once our program is closed and funded, the financing program shall be governed and construed pursuant to the laws of the State of Florida.

12. **Governing Law:** This financing commitment for Commercial Real Estate Financing Program Agreement and the other financing program documents (except the Mortgage or Note, etc. forming the Mortgage Financing program which shall be construed in accordance with the law of the state of Florida for Omega Capital Funding), shall be governed by and construed in accordance with the internal substantive laws of the State of Florida, without regard to the choice of law principles of such state.

13. **Choice of Forum:** BORROWER consents to the jurisdiction of any state or federal court sitting in the State of Florida and that venue shall be proper in any such court to the exclusion of the courts in any other state or country. The BORROWER further agrees that such designated forum is proper and convenient.

14. **Usury:** It is expressly understood and acknowledged by the BORROWER that Omega Capital Funding may not be familiar with the usury statutes in the Collateral's jurisdiction and relies on counsel opinions delivered at closing. This commitment is subject to the express condition that at no time shall the BORROWER be obligated or required to pay interest at a rate which could subject Omega Capital Funding or the co-financing to either civil or criminal liability as a result of being in excess of the maximum rate which the BORROWER is permitted by law to contract or agree to pay. If by the terms of this commitment or the note the BORROWER is at any time required or obligated to pay interest at a rate in excess of such maximum rate, the rate of interest hereunder and/or under the note shall be deemed to be immediately reduced to such maximum rate and interest payable shall be computed at such maximum rate and the portion of all prior interest payments in excess of such maximum rate shall be applied and shall be deemed to have been payments in reduction of principal balance or, if the Financing program has not closed shall be void, and if Omega Capital Funding deems it a hardship to close the Financing program under the usury statutes, all fees paid to Omega Capital Funding shall be refunded and this commitment shall be null and void

8 | 5/23/2011



Commericial Real Estate Final Conditional Commitment Letter

15. **WAIVER OF TRIAL BY JURY:** BORROWER and Omega and or Assignee each hereby unconditionally and irrevocably waive any and all right to trial by jury in any suit, counterclaim, or cross-claim arising in connection with, out of, or otherwise relating to this Commitment, the other Financing program Documents, the Obligation, the Properly, or any related transaction.

16. **No Oral Modifications:** Notwithstanding any course of dealing between the parties, any amendment, modification, rescission, waiver, or lease of any provision of this Commitment shall be effective unless the same shall be in writing and signed by the BORROWER and Lender.

17. **Complete Agreement:** This Commitment for the Commercial Real Estate Financing Program Agreement, together with the other documents, constitutes the entire agreement and understanding among the parties relating to the subject matter of this financing program, and supersedes all prior proposals, negotiations, agreements, and understanding relating to such subject matter. In entering into this agreement, BORROWER acknowledges that it is relying on no statement, representation or agent of the Lender, except for the agreements Omega sets forth herein.

18. **Survival of Commitment:** BORROWER and Omega and or Assignee hereby acknowledge and agree that this commitment shall not survive closing. Furthermore, notwithstanding the provisions of paragraph 16 above, the parties specifically acknowledge and agree that the terms and conditions of this program may be modified by mutual agreement at any time up to and including the date of closing and that any such modifications shall be incorporated directly into the program documents without the need to amend this commitment to finance the Commercial Real Estate Financing program Agreement.

The undersigned does hereby accept this financing *Final Conditional Commitment* for the Commercial Real Estate Financing Program Agreement and does hereby agree to keep and perform each and every item and condition herein before set forth and do acknowledge that the performance of such terms and conditions are obligations of the undersigned.

The attorney for the BORROWER has reviewed this commitment and has explained all of its terms and ramifications to the BORROWER:

ACCEPTED:

Mr. Michael Smallwood
Manager
AMT, LLC
480 Gulf Shore Drive
Destin FL 32541

BY: _____    DATE: 5/27/11
   Mr. Michael Smallwood

9 | 5/23/2011