IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

IN RE: AMT, LLC,

Debtor.  CASE NO. 11-30933-WSS
Chapter 11

---

**OBJECTION OF JEFFERSON BANK & TRUST COMPANY
TO DEBTOR'S PROPOSED PLAN OF REORGANIZATION**

Creditor, JEFFERSON BANK AND TRUST COMPANY, ("Jefferson Bank"), objects to confirmation of the Debtor in Possession's Plan of Reorganization, (Doc. 41), and states as follows:

**Background**

1. Jefferson Bank is a secured creditor of the debtor, AMT, LLC, (the "Debtor" or "AMT"), and a party in interest herein.

2. The Debtor commenced this Chapter 11 bankruptcy case by filing its voluntary petition on May 27, 2011, (Doc. 1). The Debtor did not file its Schedules in this case until June 20, 2011. (Doc. 22).

3. The Debtor owns two parcels of real property within the development known as Destin Pointe, which is located very close to the east side of the Destin pass in Okaloosa County. The two parcels are identified as "Lot 160" and "Parcel B" in the Debtor's Schedule A. (Doc. 22). Lot 160 is improved with a small building containing offices and two upstairs residential units. Parcel B is unimproved. The Debtor has no other business and no employees.

4. On April 24, 2003, Jefferson Bank made a loan to AMT in the original principal amount of $1,000,000.00, which the Debtor used to acquire Lot 160 and Parcel B. Jefferson Bank

took back a mortgage encumbering both Lot 160 and Parcel B to secure the amounts due under the loan to AMT. On September 20, 2007, Jefferson Bank made an additional loan to AMT in the amount of $3,000,000.00, which was also secured by a mortgage encumbering Lot 160 and Parcel B. The loan documents relating to the loans made by Jefferson Bank to AMT, and a narrative description of the history of those loans, (hereinafter, the "Jefferson Bank Loans"), are attached to the Proof of Claim filed herein by Jefferson Bank at Claim No. 3.

5. No later than March 17, 2010, the Debtor defaulted under the terms of the Jefferson Bank Loans by failing to make the payments due under the terms of those loans. On June 4, 2010, Jefferson Bank instituted an action in the Circuit Court in Okaloosa County, Florida, seeking to foreclose its mortgage lien interests in Lot 160 and Parcel B based on AMT's defaults, which case was styled as Jefferson Bank and Trust Company v. AMT, L.L.C., et al., and assigned Case No. 10-CA-3282-S, (the "State Court Lawsuit").

6. On March 29, 2011, a Final Summary Judgment was entered in Jefferson Bank's favor in the State Court Lawsuit, finding that AMT owed Jefferson Bank the sum of $4,892,231.19, and ordering Lot 160 and Parcel B sold by the clerk on May 31, 2011. See Claim No. 3 at Exhibit "H."

7. On May 27, just two business days prior to the scheduled foreclosure sale, AMT filed its petition herein. As the Debtor's principal, Stephen Bunyard, testified as the Rule 2004 Examination of the Debtor, the reason for filing this bankruptcy case was to stop the foreclosure sale which had been scheduled by the State Court. (See, Transcript of Rule 2004 Examination, Doc. 66, at p. 113).

8. On August 9, 2011, the Debtor filed its Motion for Approval of Post Petition Financing and Request for Expedited Hearing, (Doc. 34), seeking approval to obtaining a loan in the amount of $14,100,000.00 from Omega Commercial Finance Corporation, (the "Omega Loan"). The stated purpose of obtaining the Omega Loan was to pay all of the Debtor's creditors, in full, and to fund the Debtor's plan of reorganization.

9. The Debtor's motion represented that the Omega Loan would be closed on August 17, 2011, and therefore an expedited hearing was scheduled to consider the motion and the Debtor's request to obtain the take out financing. However, just prior to the expedited hearing scheduled by the Court on August 16, 2011, the Debtor revealed that the Omega Loan would not, in fact, be closing on August 16th, but instead was scheduled to close no later than September 26th. Based on those representations there were no objections to the proposed financing and the Court entered its order approving the Omega Loan.

10. Acknowledging the 90-day deadline for filing a Plan of Reorganization applicable to single asset real estate cases, the Debtor filed its proposed Plan on August 25, 2011. (Doc. 41). Consistent with its representations made at the hearing seeking approval of the Omega Loan, the Debtor's proposed Plan relies on the proceeds which would be received from the Omega Loan to fund the payments to creditors, including Jefferson Bank, under the terms of the Plan.

11. On August 12, 2011, and in anticipation of the first announced closing date of August 17th, undersigned counsel provided the Debtor with a payoff letter setting forth the amounts due under the terms of the Jefferson Bank Loans, a copy of which is attached hereto as Exhibit "A." The Debtor does not dispute the principal, interest or other amounts set forth in that letter, or the $1,122.95 *per diem* amount which would be added from and after August 12, 2011, for post-petition

interest. *See* Transcript of Debtor's Exam at pp. 113-117.

12. The announced September 26th closing deadline for the Omega Loan has come, and gone, without any loan closing and without any pre-confirmation payment to Jefferson Bank or any other creditors as contemplated by the debtor's proposed Plan. The Debtor additionally has no ability to make the interest payments of approximately $33,000 per month as required by §362(d)(3)(B) of the Bankruptcy Code in this single asset real estate case. (See, Transcript of Debtor's Exam at p. 117). Nevertheless, the Debtor continues to seek confirmation of its Plan without any amendment thereto.

### Argument and Law

13. According to its principal's testimony, the total extent of the Debtor's business is the ownership of Lot 160 and Parcel B. (Transcript of Debtor's Exam at p. 22). The only income which is, at least potentially, produced by the two properties is rent in the amount of $3,500 per month payable by the tenant in the building on Lot 160, Destin Pointe Realty. (Transcript at p. 50). However, Destin Pointe Realty, which is an entity related to Mr. Bunyard, did not pay any rent during the seventeen (17) month period prior to the Petition Date, and has no ability to pay the amounts owed for back rent. (Transcript at pp. 50-53 and 66). The two residential units located in that same building on Lot 160 are occupied by Mr. Bunyard and by a Mr. Rod Wright, neither of whom pay any rent to the Debtor for those units. (Transcript at p. 66-67). Therefore, it is obvious that the Debtor has no ability to fund any confirmable plan of reorganization using revenues from its properties.

14. The only other reorganization alternative available to the Debtor, the sale or refinancing of the two properties, has likewise proven to be un-achievable. Mr. Bunyard testified

that the two properties have been marketed for sale since 2005 without success. (Transcript at p.p. 99-100). Mr. Bunyard further testified that he has devoted virtually all his time during the past two years attempting to find refinance lender or equity investors for AMT, also without any success. (Transcript at pp. 14-15).

15. Despite all of Mr. Bunyard's efforts for the past six years, AMT has been unable to either sell or refinance its property. The terms of the only re-financing proposal currently on the table, the Omega Loan, were spelled out in a commitment letter from Omega Commercial Finance Corporation dated May 26, 2011. (Doc. 34, Ex. 1). Although nearly five months has passed since that loan commitment was issued, no loan closing has taken place, no loan documents have been produced, and no closing date has been set.

16. The Debtor, as the proponent of the proposed Plan, "has the burden of proving by a preponderance of the evidence that the plan complies with statutory requirements for confirmation." *In re: Repurchase Corporation*, 332 B.R. 336, 342 (Bankr. N.D. Ill. 2005), citing *United States v. Arnold & Baker Farms*, 177 B.R. 648, 654-55 (9th Cir. BAP 1994). Included among those statutory requirements is the requirement that the plan is feasible, and that "confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor, . . . unless such liquidation or reorganization is proposed in the plan." *Id.*, quoting from 11 U.S.C. §1129(a)(11). In order to be feasible, the proposed plan does not need to carry with it a guaranty of success. *Id.* However, in order to find that a proposed plan is feasible the Court "has an affirmative obligation to ensure that a plan of reorganization is feasible, . . . [and] that it is a plan that has 'reasonable assurance' of viability." *Id.*

17. The Debtor's proposed Plan, which relies completely upon a five month old conditional commitment to make a loan, which was not closed by the Debtor's own announced closing deadlines necessary to provide funding to consummate the Plan according to its terms, is not feasible under the provisions of §1129(a)(11) of the Bankruptcy Code. Moreover, confirming a proposed Plan like AMT's in this case, based solely on "'a hope against hope that the financing [would] actually materialize' post-confirmation without some form of corroboration would go against a bankruptcy judge's duties of ensuring that the Plan complies with the provisions of the Bankruptcy Code." *In re: Repurchase Corporation*, citing *Matter of Midwestern Companies, Inc.*, 55 B.R. 856, 863 (Bankr. M.D. Mo. 1985). AMT's optimistic hope of obtaining financing, after attempting (unsuccessfully) to do so for the past two plus years, and its likewise optimistic hope of finding a buyer after more than five years of effort, does not satisfy the Debtor's burden of proving that its proposed Plan is feasible under §1129 of the Code. *Id.* Therefore, the Debtor's proposed Plan cannot be confirmed.

18. Additionally, §1129(a)(2) and (3) of the Bankruptcy Code provide that "[t]he proponent of the plan [must] compl[y] with the applicable provisions of this title" and that "[t]he plan has been proposed in good faith." The requirement of good faith has been interpreted "as requiring that 'the debtor must accept the restrictions imposed by the Code.'" *In the Matter of Midwestern Companies, Inc.*, 55 B.R. 856, 863 (Bankr. M.D. Mo. 1985), quoting from 5 Collier on Bankruptcy para. 1129.02, p. 1129-14 (1985). As reported in the United State Trustee's objection to confirmation of the Debtor's proposed Plan filed herein, (Doc. 63), AMT has failed to file a single monthly operating report required by Rule 2015 of the Federal Rules of Bankruptcy Procedure since filing its petition in May of this year. (Doc. 63 at par. 4). Like the debtor in the *Midwestern*

*Companies* case, AMT has shown that it does not consider itself bound by the provisions of the Code and the Rules, and therefore its Plan has not been proposed in good faith and should not be confirmed.

19. Finally, and as additional evidence that the Debtor's proposed plan is not feasible, is the fact that the Debtor has failed to pay the property taxes due for Lot 160 and Parcel B for at least the last two years. (See Transcript at p. 93; Claim No. 1 filed by Okaloosa County Tax Collector). As AMT's principal, Mr. Bunyard, further testified, not only has the Debtor failed to pay the property taxes, it has no funds with which to pay them now. The Debtor's failure to preserve and protect its title to the property, and Jefferson Bank's lien thereon, by taking the most basic step of paying the property taxes is further evidence of the fact that the Debtor's Plan is not proposed in good faith, and is not feasible. For this reason also AMT's proposed Plan should not be confirmed.

WHEREFORE, for the reasons set forth above, Jefferson Bank objects to the confirmation of the Debtor's proposed Plan of Reorganization, and requests entry of an order denying confirmation of the Debtor's proposed Plan and providing Jefferson Bank with such other and

further relief as the Court may deem just and proper.

DATED this 14th day of October, 2011.

BARRON, REDDING, HUGHES,
FITE, SANBORN, KIEHN,
LEEBRICK & DICKEY, P.A.

/s/
Roland W. Kiehn
FL Bar #0870250
P. O. Box 2467
Panama City, Florida 32402
Telephone Number: 850-785-7454
Facsimile Number: 850-785-2999
Email address: rkiehn@barronredding.com
Attorney for Jefferson Bank and Trust Company

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished to J. Steven Ford, Esq., Attorney for Debtor; Jason Egan, Esq., Attorney for the U. S. Trustee, and all other parties listed on the court's electronic mailing matrix this 14th day of October, 2011.

/s/
Roland W. Kiehn

further relief as the Court may deem just and proper.

DATED this 14th day of October, 2011.

BARRON, REDDING, HUGHES,
FITE, SANBORN, KIEHN,
LEEBRICK & DICKEY, P.A.

/s/
Roland W. Kiehn
FL Bar #0870250
P. O. Box 2467
Panama City, Florida 32402
Telephone Number: 850-785-7454
Facsimile Number: 850-785-2999
Email address: rkiehn@barronredding.com
Attorney for Jefferson Bank and Trust Company

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished to J. Steven Ford, Esq., Attorney for Debtor; Jason Egan, Esq., Attorney for the U. S. Trustee, and all other parties listed on the court's electronic mailing matrix this 14th day of October, 2011.

/s/
Roland W. Kiehn

JEFFREY S. CARTER
MICHAEL P. DICKEY
JOHN M. FITE
THEODORE R. HOWELL
J. ROBERT HUGHES
ROLAND W. KIEHN
BRIAN D. LEEBRICK
COLIN L. McMICHEN
HOLLY K. MELZER
BENJAMIN W. REDDING
CLIFFORD W. SANBORN

# BARRON, REDDING, HUGHES, FITE, SANBORN, KIEHN, LEEBRICK & DICKEY, P.A.

ATTORNEYS AT LAW

220 McKENZIE AVENUE

PANAMA CITY, FLORIDA 32401-3129

DEMPSEY J. BARRON
1922-2001

MAILING ADDRESS:
POST OFFICE BOX 2467
PANAMA CITY, FLORIDA 32402-2467
850 785-7454
FAX 850 785-2999

August 12, 2011

VIA FACSIMILE   850-432-8500

J. Steven Ford, Esq.
307 S. Palafox St.
Pensacola, FL 32502

Re:   In re: AMT, LLC, Chapter 11

Dear Steve:

It appears from your filings in the Bankruptcy Court that the debtor is moving forward toward a closing of the loan from Omega Commercial Finance Corporation on August 17th. To assist the debtor and the closing agent in preparing a closing statement and obtaining releases of existing liens and encumbrances, the following is the payoff information for the existing loans from my client, Jefferson Bank and Trust Company:

Loan Numbers: 12-6000695 and 600222

| | |
|---|---|
| Principal Balance | $4,411,735.64 |
| Interest (thru 8-17-11) | 621,930.62 |
| Late Fees | 225.00 |
| Satisfaction of Mortgage Fee: | 71.00 |
| Litigation Expenses (including incurred and anticipated attorneys' fees, incurred experts' fees, costs and expenses) | 76,055.17 |
| **Total Payoff thru 8-17-11:** | **$5,110,017.43** |
| Per Diem | $   1,122.95 |


EXHIBIT A

This statement and the above figures are based on current information only. The payoff amount is subject to verification as of the date payment is received. If the original note calls for a prepayment penalty that is not stated in the above figures, this payoff statement becomes void. This statement reflects interest through 8-17-11 payoff mus be received by 2:00 p.m. for credit on that day's work. Any wire transfer received after 2:00 p.m. will require an additional day's interest.

Please wire transfer payoff funds to:

>Jefferson Bank & Trust Company
>ABA#: 081000566
>Attn: Loan Administration
>For Further Credit to: AMT, LLC
>Loan No.: 12-6000695 & 600222

Let me know if you have any questions or need any additional information regarding the payoff for these loans.

>Sincerely yours,
>
>BARRON, REDDING, HUGHES,
>FITE, SANBORN, KIEHN,
>LEEBRICK & DICKEY, P.A.
>
>Roland W. Kiehn

RWK/ltr
cc: Michael Ross (by electronic transmission)