IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

IN RE: AMT, LLC,

Debtor.                      CASE NO. 11-30933-WSS
                             Chapter 11

## JEFFERSON BANK AND TRUST COMPANY'S MOTION TO DISMISS OR CONVERT CASE TO CHAPTER 7, AND REQUEST FOR HEARING

JEFFERSON BANK AND TRUST COMPANY, ("Jefferson Bank"), a secured creditor and party in interest in the above-styled case, hereby moves the Court pursuant to §1112(b) of the United States Bankruptcy Code for entry of an order dismissing the above-styled Chapter 11 bankruptcy case commenced by the debtor, AMT, LLC, (the "Debtor" or "AMT"), or converting the Debtor's case to a case under Chapter 7 of the Code, and as grounds therefore says:

### Background

1. Jefferson Bank is a secured creditor of the debtor, AMT, LLC, (the "Debtor" or "AMT"), and a party in interest herein.

2. The Debtor commenced this Chapter 11 bankruptcy case by filing its voluntary petition on May 27, 2011, (Doc. 1). The Debtor did not file its Schedules in this case until June 20, 2011. (Doc. 22).

3. The Debtor owns two parcels of real property within the development known as Destin Pointe, which is located on the east side of the Destin Pass in Okaloosa County.

The two parcels are identified as "Lot 160" and "Parcel B" in the Debtor's Schedule A. (Doc. 22). Lot 160 is improved with a small building containing offices and two upstairs residential units. Parcel B is unimproved. The Debtor has no other business and no employees. (See, Transcript of Rule 2004 Examination of the Debtor at p. 24). (References to the transcript of the Rule 2004 Examination of the Debtor, which is filed at Doc. 66 herein, will be identified as "Transcript of Rule 2004 Exam at p. _____").

4. On April 24, 2003, Jefferson Bank made a loan to AMT in the original principal amount of $1,000,000.00, which the Debtor used to acquire Lot 160 and Parcel B. (Transcript of Rule 2004 Exam at p. 110). To secure that loan Jefferson Bank took back a mortgage encumbering both Lot 160 and Parcel B. On September 20, 2007, Jefferson Bank made an additional loan to AMT in the amount of $3,000,000.00, which was also secured by a mortgage encumbering Lot 160 and Parcel B. The Debtor's principal, Mr. Bunyard, cannot recall what the purpose of that additional loan was, nor does he have any recollection as to what happened to the additional three million dollars. (Transcript of Rule 2004 Exam at p. 111). The loan documents relating to the loans made by Jefferson Bank to AMT, and a narrative description of the history of those loans, (hereinafter, the "Jefferson Bank Loans"), are attached to the Proof of Claim filed herein by Jefferson Bank at Claim No. 3 and included in the Claims Register in this case, (hereinafter, "Claim No. 3").

5. No later than March 17, 2010, the Debtor defaulted under the terms of the Jefferson Bank Loans by failing to make the payments due under the terms of those loans. On June 4, 2010, Jefferson Bank instituted an action in the Circuit Court in Okaloosa

County, Florida, seeking to foreclose its mortgage lien interests in Lot 160 and Parcel B based on AMT's defaults, which case was styled as <u>Jefferson Bank and Trust Company v. AMT, L.L.C., et al.</u>, and assigned Case No. 10-CA-3282-S, (the "State Court Lawsuit").

6. On March 29, 2011, a Final Summary Judgment was entered in Jefferson Bank's favor in the State Court Lawsuit, finding that AMT owed Jefferson Bank the sum of $4,892,231.19, and ordering Lot 160 and Parcel B sold by the clerk on May 31, 2011. (See Claim No. 3 at Exhibit "H").

7. On May 27, just two business days prior to the scheduled foreclosure sale, AMT filed its petition herein. The Debtor's principal, Stephen Bunyard, testified at the Debtor's Rule 2004 Examination that the reason for filing this bankruptcy case was to stop the foreclosure sale which had been scheduled by the State Court. (Transcript of Rule 2004 Examination at p. 113).

8. On August 9, 2011, the Debtor filed its Motion for Approval of Post Petition Financing and Request for Expedited Hearing, (Doc. 34), seeking the Court's permission to obtain a loan in the amount of $14,100,000 from Omega Commercial Finance Corporation, (the "Omega Loan"). The stated purpose of obtaining the Omega Loan was to pay all of the Debtor's creditors, in full, and to fund the Debtor's plan of reorganization.

9. The Debtor's motion represented that the Omega Loan would be closed on August 17, 2011, and therefore an expedited hearing was scheduled to consider the motion and the Debtor's request to obtain the take out financing. However, just prior to the expedited hearing scheduled by the Court on August 16, 2011, the Debtor revealed that the

H:\RKiehn\Jefferson Bank\AMT, LLC\Motion Dismiss or Convert.wpd

3

Omega Loan would not, in fact, be closing on August 16th, but instead was scheduled to close no later than September 26th. Based on those representations there were no objections to the proposed financing and the Court entered its order approving the Omega Loan.

10. Expressly acknowledging at the expedited hearing and during the Debtor's Rule 2004 Examination that the 90-day deadline for filing a Plan of Reorganization applicable to single asset real estate cases set forth in §362(d)(3)(A) of the Code applied to this case, (See Transcript of Rule 2004 Exam at p. 117), the Debtor filed its proposed Plan on August 25, 2011. (Doc. 41). Consistent with its representations made at the hearing seeking approval of the Omega Loan, the Debtor's proposed Plan relied entirely on the proceeds which would be received from the Omega Loan to fund the payments to creditors, including Jefferson Bank, under the terms of the Plan.

11. On August 12, 2011, and in anticipation of the first announced closing date of August 17th, undersigned counsel provided the Debtor with a payoff letter setting forth the amounts due under the terms of the Jefferson Bank Loans, a copy of which is attached hereto as Exhibit "A." The Debtor does not dispute the principal, interest or other amounts set forth in that payoff letter, or the $1,122.95 *per diem* amount which would be added from and after August 12, 2011, for post-petition interest. (Transcript of Rule 2004 Exam at pp. 113-117).

12. The announced September 26th closing deadline for the Omega Loan came and went without any loan closing and without any pre-confirmation payment to Jefferson Bank or any other creditors as contemplated by the Debtor's proposed Plan. The Debtor additionally has not made, and has no ability to make, the interest payments of approximately

$33,000 per month as required by §362(d)(3)(B) of the Bankruptcy Code in this single asset real estate case. (See, Transcript of Rule 2004 Exam at p. 117).

13. At the hearing held on October 25, 2011, to consider the confirmation of the Debtor's proposed plan the Debtor's attorney, Steven Ford, acknowledged that no additional information indicating that the Omega Loan would close was available to the Debtor, and that the Debtor had no other current means to fund the proposed plan. However, Mr. Ford indicated that one of the Debtor's related entities, ZTF Family Limited Partnership, was working with another lender to obtain the funds necessary to fund a plan which would pay all creditors 100% of their claims, but that this unidentified lender had not issued any commitment letter and no evidence was put forth disclosing the name of the new lender, the terms of any loan which may be made, the undisclosed lender's ability to fund any loan or any other information suggesting that the new proposed loan is more than just wishful thinking on the Debtor's part, just as the Omega Loan turned out to be.

## Argument and Law

A. <u>The Debtor's bankruptcy case was filed in bad faith and should be dismissed.</u>

14. Section 1112(b) of the Bankruptcy Code allows a bankruptcy court, on request of a creditor or other party in interest, to convert a case filed under Chapter 11 of the Code to a case under Chapter 7 or to dismiss a case entirely, whichever is in the best interests of creditors and the estate, if the moving party establishes cause for such dismissal or conversion. The Eleventh Circuit Court of Appeals has repeatedly held that a debtor's lack of good faith may constitute cause for dismissal of a petition or conversion of a Chapter 11

reorganization case to a liquidation case under Chapter 7 of the Code. See *In re: Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir. 1984); *In re: Phoenix Picadilly, Ltd.*, 849 F.2d 1393 (11th Cir. 1988).

15. This Court has previously, and repeatedly, recognized the following factors which are common in bad faith filings:

   a. The debtor has only one asset, the property;

   b. The debtor has few unsecured creditors whose claims are small in relation to the claims of the secured creditors;

   c. The debtor has few employees;

   d. The property is the subject of a foreclosure action as a result of arrearages of the debt;

   e. The debtor's financial problems involve essentially a dispute between the debtor and the secured creditors which can be resolved in the pending state court action;

   f. The timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights.

*In re Davis Heritage GP Holdings, Inc.*, 443 B.R. 448 (Bankr. N.D. Fla. 2011); In *re Lorraine Guardian, Ltd.*, 104 B.R. 435 (Bankr. N.D. Fla. 1989), both cases citing *In re: Phoenix Picadilly, Ltd.*, 849 F.2d 1393, at 1395 (11th Cir. 1988).

16. Considering the above-referenced factors, it is clear that this case was filed in bad faith. Each and every factor previously recognized by the Court as being indicative of a bad faith filing is present in this case, as evidenced by the following:

   a. The Debtor is a single asset debtor, with its only asset being the property

encumbered by Jefferson Bank's mortgages. (Transcript of Rule 2004 Examination of the Debtor at p. 24).

b. The only unsecured, non-priority creditors identified in the Debtor's schedules are the Debtor's accountant and former attorneys, and the total amount of all those unsecured claims is $177,864.19. (See Schedule F at Doc. 22).[1] The total amount of those claims is minimal in comparison to the more than $5.0 million owed to Jefferson Bank. Furthermore, according to Stephen Bunyard, ninety percent or more of the $86,000 unsecured claim scheduled for the Debtor's former attorneys, Gray Robinson, is not related to any legal word done for AMT but instead relates to work done for other business entities related to Mr. Bunyard. (See Transcript of Rule 2004 Exam at pp. 34-35).

c. The Debtor has no employees. (See Transcript of Rule 2004 Exam at p. 24).

d. The Debtor's property, Lot 160 and Parcel B, was and is the subject of a pending foreclosure action, the State Court Lawsuit, with a final judgment in foreclosure having been entered in that State Court Lawsuit and a foreclosure sale having been set prior to the filing of the Debtor's petition. (See Claim No. 3 at Exhibit "H").

---

[1] The Debtor also lists the Okaloosa County Tax Collector as a priority unsecured creditor in its Schedule E, but pursuant to Florida law the $40,808.70 in unpaid property taxes underlying that claim is secured by a statutory lien on the Debtor's real property.

e. As revealed by the Debtor's schedules, the Debtor's financial problems involve essentially a dispute between the Debtor and its primary secured creditor, Jefferson Bank. Not only can that dispute be resolved in the pending State Court Lawsuit, prior to the date the petition was filed the State Court had, in fact, resolved that dispute in Jefferson Bank's favor and ordered the sale of AMT's property in partial satisfaction of the Debtor's obligations to the bank. In fact, of the three unsecured creditors listed by the Debtor in its schedules, only the Gray Robinson law firm made any pre-petition attempt to collect the amounts owed, (See Transcript of Rule 2004 Exam at pp. 29-41), and only Gray Robinson filed a Proof of Claim in this case prior to the claims bar date. (See Claims Register, Claim No. 4).

f. The timing of the Debtor's filing can only lead to the conclusion that this bankruptcy case was filed for the sole purpose of delaying or frustrating Jefferson Bank's efforts to enforce its rights under the Jefferson Bank Loan documents. As noted above, AMT filed its bankruptcy petition just two business days prior to the date of the foreclosure sale scheduled in the State Court Lawsuit. Furthermore, Stephen Bunyard testified that the reason for filing the bankruptcy petition was to stop the foreclosure sale. (See Transcript of Rule 2004 Exam at p. 113). Further evidence of the Debtor's longstanding plan to use the Bankruptcy Process to delay and frustrate Jefferson Bank's efforts to foreclose on its collateral can be found in the

commitment letter for the Omega Loan, which reveals the Debtor's intentions to file a Chapter 11 petition "to forestall the foreclosure proceeding." (See, paragraph 9.c of Schedule to Commitment letter attached to Debtor's Motion for Approval of Post Petition Financing [Doc. 34]).

17. Not only is every one of the recognized factors indicating a bad faith filing present in this case, there is more even evidence demonstrating the Debtor's intent to abuse the bankruptcy reorganization process. For example, other than attempting to sell its real property or refinance the debt owed to Jefferson Bank, the Debtor, AMT, has never had any employees and was not engaged in any business activities of any kind for at least seven years prior to its bankruptcy filing. (See, Transcript of Rule 2004 Examination of the Debtor at pp. 24 and 109). Furthermore, the Debtor has no intention in engaging in any development or other business relating to its property, instead intending to sell the property to a third party buyer, (Transcript of Rule 2004 Exam at p. 95), despite the fact that no third party buyer has been found even though the property has been on the market for sale since at least 2005. (Transcript of Rule 2004 Exam at p. 99).

18. While the Debtor continues in its fruitless efforts to sell its property, or to refinance the debt, it has failed to pay the property taxes which are due for 2009, 2010, and which will be due for 2011 shortly. The delinquent taxes owed for 2009 and 2010, if paid by October 31st of this year, total $42,394.67, and are secured by a lien on the property which is superior to Jefferson Bank's mortgages. (Copies of Notices of Ad Valorem Tax and Non-Ad Valorem Tax attached hereto as Composite Exhibit "B"). While not paying the property

taxes, the Debtor is allowing Mr. Bunyard and others to occupy portions of the property without paying rent, or while being severely delinquent in rent payments, all of which is further evidence of the Debtor's abuse of the protections afforded to it in bankruptcy.[2]

19. Although the Debtor claims that the value of its property exceeds the amounts owed to Jefferson Bank, this claim of equity by itself will not allow the Debtor to overcome the fact that its petition was filed in bad faith. As this Court found in the case of *In re Prince Manor Apartments, Ltd.*, 104 B.R. 414 (Bankr. N.D. Fla. 1989), when a debtor's property does not produce sufficient income to re-structure its secured debt, and the debtor has been unable to reorganize its business despite years of trying, the "possibility of a successful reorganization cannot transform a bad faith filing into one undertaken in good faith." *Id.* at 416. See also, *In re U.S. Loan Co., Inc.*, 105 B.R. 676 (Bankr. M.D. Fla. 1989) (holding that "[e]ven if one accepts the proposition urged by the Debtor that it has equity, this alone would not prevent a dismissal for cause if, in fact, the case was filed in bad faith."). Moreover, despite the Court's order granting Jefferson Bank's application for a Rule 2004 Examination, and ordering the production of documents including all appraisals for its property, the Debtor has refused to produce the appraisal upon which it bases its claim of equity in the property.

---

[2] Adding insult to Jefferson Bank's injury, according to the Debtor's Monthly Operating Reports, none of which were filed until nearly five months after the Petition Date, the Debtor has used at least some portion of the post-petition rents it has received from its property to pay its bankruptcy related expenses, ignoring the fact that those rents are cash collateral pledged to Jefferson Bank as security for the Jefferson Bank Loans and without any order permitting such use of cash collateral as required by §362(c)(2) of the Bankruptcy Code. (See Monthly Operating Reports at Docs. 70-73).

(See Transcript of Rule 2004 Exam at pp. 74-75). As a result, the Debtor's claims relating to the value of the property should be disregarded, or at the very least discounted dramatically.

20. "Good faith is an implicit requirement for filing for bankruptcy protection." *In re Joyce, Don & Associates Inc.*, 2008 WL 343265, at *2, (Bankr. M.D. Fla. 2008). The conclusion which must be reached based on AMT's pre- and post-petition financial condition, the status of the State Court Lawsuit and the Debtor's pre-petition conduct is that this case was filed in bad faith under the standards established by the Eleventh Circuit in *Phoenix Picadilly* and *Albany Partners*, and as long recognized by this Court in subsequent decisions. As a result, this case should be dismissed as a bad faith filing.

B. The Debtor has not and cannot propose a plan of reorganization which is feasible in this case.

21. The Debtor has never disputed the fact that this case is a single asset real estate case as defined by §101(51B) of the Bankruptcy Code. In fact, the Debtor, by acknowledging the 90-day deadline to file its plan of reorganization as required by §362(d)(3) of the Code, has explicitly confirmed that to be the case.

22. Although the Debtor filed a proposed plan of reorganization prior to the expiration of the 90-day deadline, that plan was not only un-confirmable on its face due to the failure to obtain the loan proceeds which were necessary to fund the proposed plan, the Debtor actually withdrew the proposed plan at the confirmation hearing held on October 25th.

23. Except for obtaining a loan in an amount sufficient to re-finance its secured

debt, the Debtor has no ability to make even the interest payments of approximately $33,000 per month as required by §362(d)(3)(B) of the Bankruptcy Code in this single asset real estate case. (See, Transcript of Debtor's Exam at p. 117),(See also Debtor's Monthly Operating Reports at Docs. 70-73). Therefore, there is no possibility, reasonable or otherwise, that the Debtor can file a confirmable plan of reorganization in this case.

24. The Debtor's failure to file a confirmable plan and its conduct in stringing the creditors and the Court along until the day of the confirmation hearing before withdrawing its proposed plan, are not only evidence of the Debtor's inability to file a confirmable plan but also of the Debtor's bad faith in filing and prosecuting this bankruptcy case.

25. Although the Debtor may argue for more time to find the hoped for "white knight" lender who will ride in and rescue the Debtor from its defaults and allow it to retain its property through a plan of reorganization, the Debtor has had more than three months to find a new lender and complete a re-financing deal while under the protective cocoon of the automatic stay. All of the Debtor's efforts have been to no avail, demonstrating that it will not and cannot proposed a confirmable plan of reorganization. For this reason also, the Debtor's case should be dismissed and Jefferson Bank should be permitted to complete its State Court Action, through and including the sale of the Debtor's property by the Clerk of the Court.

WHEREFORE, for the reasons and upon the authorities set forth above, Jefferson Bank requests entry of an order dismissing the Debtor's case or, in the alternative, and upon appropriate findings that it would be in the best interests of creditors, converting this case to

a case under Chapter 7 of the Code, and providing Jefferson Bank with such other and further relief as the Court may deem just and proper.

DATED this 27th day of October, 2011.

> BARRON, REDDING, HUGHES,
> FITE, SANBORN, KIEHN,
> LEEBRICK & DICKEY, P.A.
>
> /s/
> Roland W. Kiehn
> FL Bar #0870250
> P. O. Box 2467
> Panama City, Florida 32402
> Telephone Number: 850-785-7454
> Facsimile Number: 850-785-2999
> Email address: rkiehn@barronredding.com
> Attorney for Jefferson Bank and Trust Company

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished to J. Steven Ford, Esq., Attorney for Debtor; Jason Egan, Esq., Attorney for the U. S. Trustee, and all other parties listed on the court's electronic mailing matrix this 27th day of October, 2011.

/s/
Roland W. Kiehn

# BARRON, REDDING, HUGHES, FITE, SANBORN, KIEHN, LEEBRICK & DICKEY, P.A.

ATTORNEYS AT LAW

220 McKENZIE AVENUE

PANAMA CITY, FLORIDA 32401-3129

JEFFREY S. CARTER
MICHAEL P. DICKEY
JOHN M. FITE
THEODORE R. HOWELL
J. ROBERT HUGHES
ROLAND W. KIEHN
BRIAN D. LEEBRICK
COLIN L. McMICHEN
HOLLY K. MELZER
BENJAMIN W. REDDING
CLIFFORD W. SANBORN

DEMPSEY J. BARRON
1922-2001

MAILING ADDRESS:
POST OFFICE BOX 2467
PANAMA CITY, FLORIDA 32402-2467
850 785-7454
FAX 850 785-2999

August 12, 2011

VIA FACSIMILE  850-432-8500

J. Steven Ford, Esq.
307 S. Palafox St.
Pensacola, FL 32502

Re: In re: AMT, LLC, Chapter 11

Dear Steve:

It appears from your filings in the Bankruptcy Court that the debtor is moving forward toward a closing of the loan from Omega Commercial Finance Corporation on August 17th. To assist the debtor and the closing agent in preparing a closing statement and obtaining releases of existing liens and encumbrances, the following is the payoff information for the existing loans from my client, Jefferson Bank and Trust Company:

<u>Loan Numbers: 12-6000695 and 600222</u>

| | |
|---|---|
| Principal Balance | $4,411,735.64 |
| Interest (thru 8-17-11) | 621,930.62 |
| Late Fees | 225.00 |
| Satisfaction of Mortgage Fee: | 71.00 |
| Litigation Expenses (including incurred and anticipated attorneys' fees, incurred experts' fees, costs and expenses) | 76,055.17 |
| **Total Payoff thru 8-17-11:** | **$5,110,017.43** |
| Per Diem | $ 1,122.95 |


EXHIBIT A

This statement and the above figures are based on current information only. The payoff amount is subject to verification as of the date payment is received. If the original note calls for a prepayment penalty that is not stated in the above figures, this payoff statement becomes void. This statement reflects interest through 8-17-11 payoff mus be received by 2:00 p.m. for credit on that day's work. Any wire transfer received after 2:00 p.m. will require an additional day's interest.

Please wire transfer payoff funds to:

> Jefferson Bank & Trust Company
> ABA#: 081000566
> Attn: Loan Administration
> For Further Credit to: AMT, LLC
> Loan No.: 12-6000695 & 600222

Let me know if you have any questions or need any additional information regarding the payoff for these loans.

Sincerely yours,

BARRON, REDDING, HUGHES,
FITE, SANBORN, KIEHN,
LEEBRICK & DICKEY, P.A.


Roland W. Kiehn

RWK/ltr
cc: Michael Ross (by electronic transmission)

# OKALOOSA COUNTY
## TAX COLLECTOR
**2009 Delinquent Individual Tax Certificate**    1016150

Notice of Ad Valorem Tax and Non-Ad Valorem Assessments

| ACCOUNT NUMBER | ESCROW CD | ASSESSED VALUE | EXEMPTIONS | TAXABLE VALUE | MILLAGE CODE |
|---|---|---|---|---|---|
| 002S24011000001600 | | SEE BELOW | SEE BELOW | SEE BELOW | DEDF |

**PAY DELINQUENT TAXES BY CASH, CASHIER'S CHECK OR MONEY ORDER**

AMT LLC
C/O BURDS & KUNTZ PC
2200 WESTPORT PLAZA DR
ST LOUIS, MO 63146

Bankrupt, BANKRUPTCY

480 GULF SHORE DR
DESTIN POINTE, SALES OFFICE LOT 160

### AD VALOREM TAXES

| TAXING AUTHORITY | MILLAGE RATE | ASSESSED VALUE | EXEMPTION AMOUNT | TAXABLE VALUE | TAXES LEVIED |
|---|---|---|---|---|---|
| OKALOOSA COUNTY BD OF CO COMMS | | | | | |
| GENERAL REVENUE | 1.3845 | 875,225 | 0 | 875,225 | 1,211.75 |
| FINE AND FORFEITURE | 1.7741 | 875,225 | 0 | 875,225 | 1,552.73 |
| PUBLIC HEALTH | 0.0534 | 875,225 | 0 | 875,225 | 46.74 |
| EMERGENCY MEDICAL | 0.0779 | 875,225 | 0 | 875,225 | 68.18 |
| SCHOOL LOCAL | 2.2480 | 875,225 | 0 | 875,225 | 1,967.51 |
| SCHOOL STATE | 5.3910 | 875,225 | 0 | 875,225 | 4,718.34 |
| NORTHWEST WATER DISTRICT | 0.0450 | 875,225 | 0 | 875,225 | 39.39 |
| CITY OF DESTIN | 1.4550 | 875,225 | 0 | 875,225 | 1,273.45 |
| DESTIN FIRE DISTRICT | 1.0000 | 875,225 | 0 | 875,225 | 875.23 |
| **TOTAL MILLAGE** | **13.4289** | | | **AD VALOREM TAXES** | **$11,753.32** |

### NON-AD VALOREM ASSESSMENTS

| LEVYING AUTHORITY | RATE | AMOUNT |
|---|---|---|
| OKALOOSA BEACH RESTORATION MSB | | 54.63 |
| | **NON-AD VALOREM ASSESSMENTS** | **$54.63** |

PAY ONLINE WITH CREDIT/DEBIT CARD AT WWW.OKALOOSATAX.COM

| COMBINED TAXES AND ASSESSMENTS | $11,807.95 | See reverse side for important information |
|---|---|---|

| Face: 12,974.28 | Cert #1003 | If Received By | Oct 31, 2011 | Nov 30, 2011 | Dec 30, 2011 |
|---|---|---|---|---|---|
| Rate: 3.75% | Bidder #8766 | Please Pay | $13,669.79 | $13,710.33 | $13,750.88 |

---

# OKALOOSA COUNTY
## TAX COLLECTOR
**2009 Delinquent Individual Tax Certificate**    1016150

Notice of Ad Valorem Tax and Non-Ad Valorem Assessments

| ACCOUNT NUMBER | ESCROW CD | ASSESSED VALUE | EXEMPTIONS | TAXABLE VALUE | MILLAGE CODE |
|---|---|---|---|---|---|
| 002S24011000001600 | | SEE ABOVE | SEE ABOVE | SEE ABOVE | DEDF |

**ONLY CASH, CASHIER'S CHECK OR MONEY ORDER ACCEPTED**

| Face: 12,974.28 | Cert #1003 | If Received By | Oct 31, 2011 | Nov 30, 2011 | Dec 30, 2011 |
|---|---|---|---|---|---|
| Rate: 3.75% | Bidder #8766 | Please Pay | $13,669.79 | $13,710.33 | $13,750.88 |

AMT LLC
C/O BURDS & KUNTZ PC
2200 WESTPORT PLAZA DR
ST LOUIS, MO 63146

Bankrupt, BANKRUPTCY

480 GULF SHORE DR
DESTIN POINTE, SALES OFFICE LOT 160

**PAY DELINQUENT TAXES BY CASH, CASHIER'S CHECK OR MONEY ORDER**

0000064122 0001180795 000000001016150 0001 2



EXHIBIT
Composite
B

# OKALOOSA COUNTY
TAX COLLECTOR

2010 Delinquent Real Estate
Notice of Ad Valorem Tax and Non-Ad Valorem Assessments

1016128

| ACCOUNT NUMBER | ESCROW CD | ASSESSED VALUE | EXEMPTIONS | TAXABLE VALUE | MILLAGE CODE |
|---|---|---|---|---|---|
| 002S24011000001600 | | SEE BELOW | SEE BELOW | SEE BELOW | DEDF |

**PAY DELINQUENT TAXES BY CASH, CASHIER'S CHECK OR MONEY ORDER**

AMT LLC
C/O BURDS & KUNTZ PC
2200 WESTPORT PLAZA DR
ST LOUIS, MO  63146

**Prior Year(s) Taxes Due**
Bankrupt, BANKRUPTCY

480 GULF SHORE DR
DESTIN POINTE, SALES OFFICE LOT 160

## AD VALOREM TAXES

| TAXING AUTHORITY | MILLAGE RATE | ASSESSED VALUE | EXEMPTION AMOUNT | TAXABLE VALUE | TAXES LEVIED |
|---|---|---|---|---|---|
| OKALOOSA COUNTY BD OF CO COMMS | | | | | |
| GENERAL REVENUE | 1.4546 | 812,921 | 0 | 812,921 | 1,182.47 |
| FINE AND FORFEITURE | 1.6724 | 812,921 | 0 | 812,921 | 1,359.53 |
| PUBLIC HEALTH | 0.0578 | 812,921 | 0 | 812,921 | 46.99 |
| EMERGENCY MEDICAL | 0.1051 | 812,921 | 0 | 812,921 | 85.44 |
| SCHOOL LOCAL | 2.2480 | 812,921 | 0 | 812,921 | 1,827.44 |
| SCHOOL STATE | 5.2860 | 812,921 | 0 | 812,921 | 4,297.10 |
| NORTHWEST WATER DISTRICT | 0.0450 | 812,921 | 0 | 812,921 | 36.58 |
| CITY OF DESTIN | 1.4550 | 812,921 | 0 | 812,921 | 1,182.80 |
| DESTIN FIRE DISTRICT | 1.0000 | 812,921 | 0 | 812,921 | 812.92 |
| **TOTAL MILLAGE** | **13.3239** | | | **AD VALOREM TAXES** | **$10,831.27** |

## NON-AD VALOREM ASSESSMENTS

| LEVYING AUTHORITY | RATE | AMOUNT |
|---|---|---|
| OKALOOSA BEACH RESTORATION MSB | | 54.63 |

PAY ONLINE WITH CREDIT/DEBIT CARD AT WWW.OKALOOSATAX.COM

**NON-AD VALOREM ASSESSMENTS** $54.63

| COMBINED TAXES AND ASSESSMENTS | $10,885.90 | See reverse side for important information |
|---|---|---|

| If Received By | Oct 31, 2011 | Nov 30, 2011 | Dec 30, 2011 | | |
|---|---|---|---|---|---|
| Please Pay | $12,046.92 | $12,210.21 | $12,373.50 | | |

*RETAIN THIS PORTION FOR YOUR RECORDS*
*WALK-IN CUSTOMERS PLEASE BRING FOR RECEIPT*
*AFTER MARCH 31ST, TAXES MUST BE PAID WITH CASH, CASHIER'S CHECK OR MONEY ORDER*

---

# OKALOOSA COUNTY
TAX COLLECTOR

2010 Delinquent Real Estate
Notice of Ad Valorem Tax and Non-Ad Valorem Assessments

1016128

| ACCOUNT NUMBER | ESCROW CD | ASSESSED VALUE | EXEMPTIONS | TAXABLE VALUE | MILLAGE CODE |
|---|---|---|---|---|---|
| 002S24011000001600 | | SEE ABOVE | SEE ABOVE | SEE ABOVE | DEDF |

Prior Year(s) Taxes Due Pay your taxes online at: http://www.okaloosatax.com/ PAYMENTS MUST BE MADE IN US FUNDS.

| If Received By | Oct 31, 2011 | Nov 30, 2011 | Dec 30, 2011 | | |
|---|---|---|---|---|---|
| Please Pay | $12,046.92 | $12,210.21 | $12,373.50 | | |

AMT LLC
C/O BURDS & KUNTZ PC
2200 WESTPORT PLAZA DR
ST LOUIS, MO  63146

**Prior Year(s) Taxes Due**
Bankrupt, BANKRUPTCY

480 GULF SHORE DR
DESTIN POINTE, SALES OFFICE LOT 160

**PAY DELINQUENT TAXES BY CASH, CASHIER'S CHECK OR MONEY ORDER**

0000001800  0001088590  00000000001016128  0001 2

# OKALOOSA COUNTY
TAX COLLECTOR

**2009 Delinquent Individual Tax Certificate**  1015699

Notice of Ad Valorem Tax and Non-Ad Valorem Assessments

| ACCOUNT NUMBER | ESCROW CD | ASSESSED VALUE | EXEMPTIONS | TAXABLE VALUE | MILLAGE CODE |
|---|---|---|---|---|---|
| 002S2400000022000A | | SEE BELOW | SEE BELOW | SEE BELOW | DEDF |

**PAY DELINQUENT TAXES BY CASH, CASHIER'S CHECK OR MONEY ORDER**

AMT LLC  
C/O BURDS & KUNTZ PC  
2200 WESTPORT PLAZA DR  
ST LOUIS, MO   63146

Bankrupt, BANKRUPTCY

UNKNOWN

COM NW COR DESTIN POINTE  
S/D,S23 DEG W ALG W LINE OF  
S/D,439.95FT TO  
See Additional Legal on Tax Roll

### AD VALOREM TAXES

| TAXING AUTHORITY | MILLAGE RATE | ASSESSED VALUE | EXEMPTION AMOUNT | TAXABLE VALUE | TAXES LEVIED |
|---|---|---|---|---|---|
| OKALOOSA COUNTY BD OF CO COMMS | | | | | |
| GENERAL REVENUE | 1.3845 | 604,957 | 0 | 604,957 | 837.56 |
| FINE AND FORFEITURE | 1.7741 | 604,957 | 0 | 604,957 | 1,073.26 |
| PUBLIC HEALTH | 0.0534 | 604,957 | 0 | 604,957 | 32.30 |
| EMERGENCY MEDICAL | 0.0779 | 604,957 | 0 | 604,957 | 47.13 |
| SCHOOL LOCAL | 2.2480 | 604,957 | 0 | 604,957 | 1,359.95 |
| SCHOOL STATE | 5.3910 | 604,957 | 0 | 604,957 | 3,261.32 |
| NORTHWEST WATER DISTRICT | 0.0450 | 604,957 | 0 | 604,957 | 27.22 |
| CITY OF DESTIN | 1.4550 | 604,957 | 0 | 604,957 | 880.21 |
| DESTIN FIRE DISTRICT | 1.0000 | 604,957 | 0 | 604,957 | 604.96 |
| **TOTAL MILLAGE** | **13.4289** | | | **AD VALOREM TAXES** | **$8,123.91** |

### NON-AD VALOREM ASSESSMENTS

| LEVYING AUTHORITY | RATE | AMOUNT |
|---|---|---|
| OKALOOSA BEACH RESTORATION MSB | | 54.63 |

PAY ONLINE WITH CREDIT/DEBIT CARD AT WWW.OKALOOSATAX.COM

| | NON- AD VALOREM ASSESSMENTS | $54.63 |
|---|---|---|
| COMBINED TAXES AND ASSESSMENTS | $8,178.54 | See reverse side for important information |

| Face: 8,991.90 | Cert #987 | If Received By | Oct 31, 2011 | Nov 30, 2011 | Dec 30, 2011 |
|---|---|---|---|---|---|
| Rate: 7.25% | Bidder #18938 | Please Pay | $9,921.69 | $9,976.02 | $10,030.35 |

RETAIN THIS PORTION FOR YOUR RECORDS. WALK-IN CUSTOMERS PLEASE BRING FOR RECEIPT. AFTER MARCH 31ST, TAXES MUST BE PAID WITH CASH, CASHIER'S CHECK OR MONEY ORDER.

---

# OKALOOSA COUNTY
TAX COLLECTOR

**2009 Delinquent Individual Tax Certificate**  1015699

Notice of Ad Valorem Tax and Non-Ad Valorem Assessments

| ACCOUNT NUMBER | ESCROW CD | ASSESSED VALUE | EXEMPTIONS | TAXABLE VALUE | MILLAGE CODE |
|---|---|---|---|---|---|
| 002S2400000022000A | | SEE ABOVE | SEE ABOVE | SEE ABOVE | DEDF |

**ONLY CASH, CASHIER'S CHECK OR MONEY ORDER ACCEPTED**

| Face: 8,991.90 | Cert #987 | If Received By | Oct 31, 2011 | Nov 30, 2011 | Dec 30, 2011 |
|---|---|---|---|---|---|
| Rate: 7.25% | Bidder #18938 | Please Pay | $9,921.69 | $9,976.02 | $10,030.35 |

AMT LLC  
C/O BURDS & KUNTZ PC  
2200 WESTPORT PLAZA DR  
ST LOUIS, MO   63146

Bankrupt, BANKRUPTCY

UNKNOWN

COM NW COR DESTIN POINTE  
S/D,S23 DEG W ALG W LINE OF  
S/D,439.95FT TO  
See Additional Legal on Tax Roll

**PAY DELINQUENT TAXES BY CASH, CASHIER'S CHECK OR MONEY ORDER**

0000045158   0000817854   0000000001015699   0001   8

# OKALOOSA COUNTY
## TAX COLLECTOR

**2010 Delinquent Real Estate**
Notice of Ad Valorem Tax and Non-Ad Valorem Assessments

1015677

| ACCOUNT NUMBER | ESCROW CD | ASSESSED VALUE | EXEMPTIONS | TAXABLE VALUE | MILLAGE CODE |
|---|---|---|---|---|---|
| 002S2400000022000A | | SEE BELOW | SEE BELOW | SEE BELOW | DEDF |

**PAY DELINQUENT TAXES BY CASH, CASHIER'S CHECK OR MONEY ORDER**

AMT LLC
C/O BURDS & KUNTZ PC
2200 WESTPORT PLAZA DR
ST LOUIS, MO   63146

**Prior Year(s) Taxes Due**
Bankrupt, BANKRUPTCY

UNKNOWN

COM NW COR DESTIN POINTE
S/D,S23 DEG W ALG W LINE OF
S/D,439.95FT TO
See Additional Legal on Tax Roll

### AD VALOREM TAXES

| TAXING AUTHORITY | MILLAGE RATE | ASSESSED VALUE | EXEMPTION AMOUNT | TAXABLE VALUE | TAXES LEVIED |
|---|---|---|---|---|---|
| OKALOOSA COUNTY BD OF CO COMMS | | | | | |
| GENERAL REVENUE | 1.4546 | 453,572 | 0 | 453,572 | 659.77 |
| FINE AND FORFEITURE | 1.6724 | 453,572 | 0 | 453,572 | 758.55 |
| PUBLIC HEALTH | 0.0578 | 453,572 | 0 | 453,572 | 26.22 |
| EMERGENCY MEDICAL | 0.1051 | 453,572 | 0 | 453,572 | 47.67 |
| SCHOOL LOCAL | 2.2480 | 453,572 | 0 | 453,572 | 1,019.63 |
| SCHOOL STATE | 5.2860 | 453,572 | 0 | 453,572 | 2,397.58 |
| NORTHWEST WATER DISTRICT | 0.0450 | 453,572 | 0 | 453,572 | 20.41 |
| CITY OF DESTIN | 1.4550 | 453,572 | 0 | 453,572 | 659.95 |
| DESTIN FIRE DISTRICT | 1.0000 | 453,572 | 0 | 453,572 | 453.57 |
| **TOTAL MILLAGE** | 13.3239 | | | **AD VALOREM TAXES** | **$6,043.35** |

### NON-AD VALOREM ASSESSMENTS

| LEVYING AUTHORITY | RATE | AMOUNT |
|---|---|---|
| OKALOOSA BEACH RESTORATION MSB | | 54.63 |

PAY ONLINE WITH CREDIT/DEBIT CARD AT WWW.OKALOOSATAX.COM

| NON- AD VALOREM ASSESSMENTS | | $54.63 |

| COMBINED TAXES AND ASSESSMENTS | $6,097.98 | See reverse side for important information |

| If Received By | Oct 31, 2011 | Nov 30, 2011 | Dec 30, 2011 | | |
|---|---|---|---|---|---|
| Please Pay | $6,756.27 | $6,847.74 | $6,939.21 | | |

# OKALOOSA COUNTY
## TAX COLLECTOR

**2010 Delinquent Real Estate**
Notice of Ad Valorem Tax and Non-Ad Valorem Assessments

1015677

| ACCOUNT NUMBER | ESCROW CD | ASSESSED VALUE | EXEMPTIONS | TAXABLE VALUE | MILLAGE CODE |
|---|---|---|---|---|---|
| 002S2400000022000A | | SEE ABOVE | SEE ABOVE | SEE ABOVE | DEDF |

Prior Year(s) Taxes Due Pay your taxes online at: http://www.okaloosatax.com/ PAYMENTS MUST BE MADE IN US FUNDS.

| If Received By | Oct 31, 2011 | Nov 30, 2011 | Dec 30, 2011 | | |
|---|---|---|---|---|---|
| Please Pay | $6,756.27 | $6,847.74 | $6,939.21 | | |

AMT LLC
C/O BURDS & KUNTZ PC
2200 WESTPORT PLAZA DR
ST LOUIS, MO   63146

**Prior Year(s) Taxes Due**
Bankrupt, BANKRUPTCY

UNKNOWN

COM NW COR DESTIN POINTE
S/D,S23 DEG W ALG W LINE OF
S/D,439.95FT TO
See Additional Legal on Tax Roll

**PAY DELINQUENT TAXES BY CASH, CASHIER'S CHECK OR MONEY ORDER**

0000001800 0000609798 0000000001015677 0001 3